For the foregoing reasons, the judgments of the district court appealed from herein are

AFFIRMED.

**RODGERS, John**

v.

**SUN REFINING AND MARKETING COMPANY, Appellant.**

No. 85–1089.

United States Court of Appeals,
Third Circuit.

Argued Sept. 10, 1985.

Decided Sept. 24, 1985.

William J. Taylor (argued), Thomas A. Masterson, Jr., Taylor & Taylor, Philadelphia, Pa., for appellant.

John R. O'Donnell (argued), Norman P. Zarwin, Martin J. Resnick, Zarwin, Baum, Resnick & Cohen, P.C., Philadelphia, Pa., for appellee.

Before HUNTER, GARTH, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Plaintiff-appellee John Rodgers ("Rodgers") originally brought an action to enjoin defendant-appellant Sun Refining & Marketing Company ("Sun") from terminating his gasoline dealer franchise in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq. (1982). The District Court for the Eastern District of Pennsylvania found that Sun had grounds to refuse to renew the franchise relationship, but nevertheless allowed Rodgers to submit a proposed franchise agreement, which Sun refused to consider. Characterizing Sun's refusal to consider Rodger's proposal "arbitrary" and "the very type of circumstance that the [PMPA] is intended to protect a franchisee against,"

the district court extended the term of the original franchise agreement for an additional three years. Because the district court misconstrued the PMPA, we will reverse.

## I.

Since 1970, Rodgers and a partner operated a service station in Malvern, Pennsylvania, as Sun franchisees. In September 1981, the partnership dissolved, and Rodgers and Sun negotiated a franchise agreement for the same station. Before entering into the present franchise agreement, however, Sun contacted Rodgers regarding fuel outages [1] that occurred during the prior franchise agreement. Approximately two months before Rodgers took over the station from his partner, Sun wrote Rodgers, warning him to "see to it that you do not run out of gasoline for sale to the public or else we will have to pursue courses of action afforded to us by applicable law." On November 10, 1981, Rodgers and Sun entered into a three-year franchise agreement under which the parties agreed that the leased premises were to be used as a "retail gasoline service station" and that the resale of Sun's branded motor fuels was the essence of the agreement.

Between November 17, 1981 and January 10, 1984, Rodgers's cash flow problems caused him to run out of one or more gasoline products at least twenty times.[2] In a letter dated May 10, 1983, Sun offered to assist Rodgers in improving his cash flow by: releasing $10,000 from his "collateral deposit account" (a security account held by Sun); permitting Rodgers to deduct from the price of a load of gasoline an amount equal to the value of gasoline purchased by credit card customers whose re-

---

1. All of Sun's service stations offer four types of unleaded gasoline for sale: "super," 91.5 octane; "plus," 89 octane; "regular," 87 octane; and "economy," 86 octane; along with "regular" leaded gasoline. The super and economy unleaded gases are blended together in the "custom blending" gasoline pumps at the service stations to make the "plus" and "regular" unleaded products. Consequently, if there are outages of either super or economy gas, three of the four unleaded products are unavailable for sale.

2. Rodgers's outages were due to his own financial difficulties. He allowed the remaining fuel levels to drop to extremely low levels because he needed the cash received from the sale of the gasoline to pay for the next shipment. (Sun required that gasoline be purchased in shipments of 8500 gallons only, ordered at least 48 hours in advance.) Consequently, he often ran out of some or all types of fuel before the next shipment arrived, even after repeated warnings from Sun that these outages were unacceptable and would not be tolerated.

ceipts had not yet been validated;[3] and reducing the surcharge deposited into the collateral deposit account from one cent to one-half cent per gallon of gasoline purchased. In the same letter, Sun warned Rodgers that two additional fuel outages in any ninety day period would be deemed to exceed the minimum standard of fuel availability "at the heart" of the franchise relationship.[4] Nevertheless, Rodgers ran out of the super, plus, and regular grades of unleaded gasoline on January 5 and 10, 1984, and continued to experience fuel outages until the commencement of trial on November 2, 1984.

On March 1, 1984, Sun advised Rodgers that the franchise would be terminated June 4, 1984. Rodgers filed a complaint and motion for a preliminary injunction on May 18, 1984, alleging that Sun's termination of the franchise violated the PMPA. By stipulation approved by the court and entered on May 31, 1984, the parties agreed to consolidate the preliminary injunction hearing with the trial on the merits, and to maintain the status quo with respect to the franchise agreement pending a final order.

On November 14, 1984, the district court delivered its findings of fact and conclusions of law. The court characterized the dispute as a failure to renew the franchise relationship and determined that the evidence supported Sun's refusal to renew. Despite this finding, the district court al-

lowed Rodgers two weeks to offer Sun a proposal concerning the continuation of the franchise relationship. The district court's order dated November 19, 1984, denying injunctive relief, stated that the franchise agreement had expired on November 9, 1984, thereby making the issue of Sun's attempted termination moot.

Although Rodgers submitted a proposed franchise agreement in time, Sun refused to consider or comment upon the proposal. On December 12, 1984, Rodgers amended his complaint to add a count seeking an injunction against Sun's "unreasonable non-renewal of his franchise." In its memorandum and final order dated January 23, 1985, 603 F.Supp. 140, the court found that Sun failed to meet its burden under the PMPA of going forward with evidence indicating that Rodgers would fail to comply with the proposed agreement. Consequently, the court enjoined Sun from disturbing the franchise relationship in any way for three years.

## II.

Sun raises four issues on appeal. First, Sun alleges that after the court found that the outages were Rodger's fault, were events relevant to the franchise agreement, and reasonable grounds for Sun to terminate or refuse renewal, the district court erred in not allowing Sun to terminate under PMPA § 2802(b)(2).[5] Second, Sun

---

3. Because Rodgers had used receipts from his own personal credit card to make up the required balance, Sun had placed Rodgers on "restricted credit card status." A dealer on restricted credit card status cannot deduct credit card receipts from gas deliveries until Sun validates the receipts.

4. Sun's letter stated:
 We are both aware of the severe adverse effects of being out of product. The availability and sale of its Sunoco branded products is at the heart of the Sunoco franchise and franchise relationship with its dealers. For the reasons stated, as well as numerous other reasons, outages of product must be kept to a minimum. In a situation such as yours, where recurring outages have occurred in the recent past, two additional outages in any 90 day period would be considered as to have exceeded this minimum standard.
 Joint Appendix at 468.

5. Section 2802(b)(2) of the PMPA provides in part:
 (2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:
 (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship. . . .
 (B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise. . . .
 (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable. . . .
 PMPA § 2801(13) defines "failure" to exclude failures "unimportant to the franchise" and failures "for a cause beyond the reasonable control of the franchisee." These exclusions are simply

claims that because the parties extended the franchise agreement until final judgment, the district court erred in holding that the franchise agreement expired and in requiring the parties to treat the case as one of failure to renew rather than termination. Third, Sun believes that the district court abused its discretion in allowing Rodgers an opportunity to submit a proposal concerning the continuation of the franchise relationship after the court found that "[t]he evidence supports ... [Sun's] refusal to renew the franchise relationship." Finally, Sun also believes that the court abused its discretion by extending the terms of the original franchise agreement for an additional three years. We will not address each claim, as we find our resolution of the first issue dispositive of the remaining three.

■ Sun claims that PMPA § 2802(b)(2)(A), which permits termination or nonrenewal for failure to comply with a reasonable and material provision of the franchise, allows it to terminate Rodgers's franchise. Because the franchise agreement states that "the resale by Dealer of Company's branded motor fuels is the essence of this Agreement," Sun maintains that Rodgers's repeated gasoline outages violated the essence of the franchise agreement. Rodgers responds that § 2802(b)(2)(A) does not apply because he did not violate any specific provision of the franchise agreement. Indeed, the district court expressed serious doubt as to whether or not Rodgers's fuel outages could provide the basis for franchise termination "in view of Sun's knowledge of [Rodgers's

past fuel outages] *before* entering into the franchise and an election in the face of such knowledge not to include a running out of fuel provision ... [in] the franchise contract." This finding clearly prohibits Rodgers's termination under PMPA § 2802(b)(2)(A) or (B), because both sections require the franchisee to violate some provision of the franchise agreement. We cannot say that this finding is erroneous.

■ Even if this finding is correct, we conclude that Sun is still entitled to terminate under PMPA § 2802(b)(2)(C). This section provides for termination or nonrenewal after the "occurrance of an event ... relevant to the franchise relationship" if, as a result of the event, termination or non-renewal is reasonable. The court found both these elements present when it ruled on November 14th that Rodgers's inability to maintain adequate fuel supplies an event "relevant to the relationship" and a reasonable ground, on the record, to refuse renewal. Because the district court established that the legal standard for termination or non-renewal under § 2802(b)(2)(C) is satisfied, we conclude that Sun's termination of Rodgers's franchise is justified.[6]

■ Because we find Sun entitled to terminate Rodgers's franchise, we need not decide whether the district court abused its discretion in allowing Rodgers to submit a proposed franchise agreement and in extending the original franchise agreement for three years. We take notice, however, that the district court's power to grant equitable relief pursuant to PMPA § 2805(b)(1)[7] applies only where the court

legislated excuses for nonperformance, *see* *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1224 n. 16 (7th Cir.1982), indicating that nonperformance must be both relevant to the franchise relationship and the result of circumstances within the franchisee's control. Because the trial court found that the outages caused by Rodgers's fiscal problems were "matters within his control," and Rodgers does not contest this finding, our discussion assumes fault within the meaning of the PMPA. The relevance of the outages to the franchise is discussed *infra.*

6. In the stipulation entered May 31, 1984, the parties agreed to maintain the status quo with respect to the franchise agreement pending the district court's final order. The district court

disregarded this agreement when it treated the case as a failure to renew. Although we disagree with the lower court's finding that the termination issue was mooted, the question of characterization is irrelevant because PMPA § 2802(b)(2)(C) applies to both nonrenewals and terminations. *See id., supra* note 5.

7. Section 2805(b)(1) of the PMPA states:
(b)(1) In any action under subsection (a) of this section, the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

finds that the franchiser failed to comply with PMPA § 2802 or § 2803. When the district court gave appellee two weeks to submit a proposed franchise agreement to Sun, it had not yet found that Sun violated any PMPA requirements. The district court therefore did not have the power to grant any equitable relief.

### III.

 Congress passed the PMPA in 1978 in recognition of "the disparity of bargaining power which exists between the franchisor and the franchisee" in the gasoline industry. *Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 672 (3d Cir.1984). Although the Act's primary goal is to provide protection to franchisees, it also provides for "the legitimate needs of a franchisor to be able to terminate a franchise ... based upon certain actions of the franchisee, including certain failures to comply with contractual obligations...." *Id.* at 673. Where the district court finds, as it did here, that the franchisor had adequate grounds under the PMPA to terminate or refuse to renew the franchise, it must permit the franchisor to exercise its business judgment. Only in those circumstances prescribed by the Act may the court intervene to restore the equities of the bargaining relationship.

Accordingly, we will reverse the district court's order and direct the entry of judgment for appellant.