John **ROBERTSON**, Appellant,

v.

**MOBIL OIL CORPORATION**, Appellee.

No. 84–1687.

United States Court of Appeals,
Third Circuit.

Argued Sept. 10, 1985.

Decided Dec. 13, 1985.

Arnold E. Cohen, Norman P. Zarwin (Argued), Martin J. Resnick, Zarwin, Baum, Resnick & Cohen, P.C., Philadelphia, Pa., for appellant.

Thomas R. Trowbridge, III (Argued), Donovan, Leisure, Newton & Irvine, New York City, Brian T. Guthrie, Mobil Oil Corp., Valley Forge, Pa., for appellee.

---

Before SEITZ, and BECKER, Circuit Judges and ROSENN, Senior Circuit Judge.

## OPINION OF THE COURT

BECKER, Circuit Judge.

John W. Robertson, former operator of a Mobil gasoline station in King of Prussia, Pennsylvania, appeals from a judgment of the district court denying his application for a temporary and permanent injunction to prevent appellee Mobil Oil Corporation from refusing to renew his franchise. Robertson claims that Mobil's decision not to renew was impermissible under the Petroleum Marketing Practices Act (PMPA). 15 U.S.C. § 2801 *et seq.* (1982). Mobil contends that its action was proper under 15 U.S.C. § 2802(b)(3)(B) which reads:

(3) "For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

B) The receipt of numerous bona fide customer complaints by the franchisor concerning the franchisee's operation of the marketing premises, if—

i) the franchisee was promptly apprised of the existence and nature of such complaints by the franchisor; and

ii) if such complaints related to the conditions of such premises or to the conduct of any employee of such franchisee, the franchisee did not promptly take action to cure or correct the basis of such complaints.

After a trial, the district court made findings of fact leading it to the conclusion that Mobil was justified in not renewing Robertson's franchise. Robertson appeals and we affirm.

## I

The facts adduced at trial may be summarized as follows.[1] In September, 1981, Robertson and Mobil entered into a franchise agreement. Shortly thereafter, Robertson followed appellee's "strong sugges-tion" that he provide a "mini-serve" gasoline island in addition to the "full-serve" island. As the mini-serve operates at little or no profit, dealers who introduce a mini-service island often compensate by increasing the price of gasoline at the full-serve island. Robertson raised the prices at the full-serve island substantially. He advertised the price of mini-serve gasoline with a large Mobil sign that was visible from the road. However, the sign advertised neither the price of full serve gasoline nor the hours the mini-serve was available. During the next three years, Mobil received 126 customer complaints about Robertson's operation (most of which were written, although some were communicated by telephone). In August 1984, when Robertson's franchise expired, Mobil informed him that, pursuant to 15 U.S.C. § 2802(b)(3)(B), it had elected not to renew the franchise.

As the question before us is, in essence, whether the many customer complaints justified Mobil's decision not to renew Robertson's franchise, it is important to analyse these complaints carefully. The 126 complaints fall into three categories. First, Mobil received roughly twenty-five miscellaneous complaints including allegations of lost gas caps, discourteous service, unsatisfactory repair work and a rental charge assessed for a borrowed gas can. A second category of complaints, apparently numbering in the forties, simply asserted that Robertson charged excessive prices (roughly $1.65–1.75 per gallon) at the full-service island. One customer, for example, alleged that the full-serve price was forty-four cents above what he considered the prevailing market rate. A third category of complaints, numbering roughly fifty, charged that the sign advertising the price of mini-serve gasoline was misleading. These customers stated that the sign lured them into the station where they found the mini-serve island closed; Robertson concedes that he did not keep it open all the time. These customers were then referred to the full-serve island where they discover-

---

[1]. We view the evidence and all inferences reasonably drawn therefrom in the light most favorable to the side that prevailed in the trial court. *Massarky v. General Motors Corp.*, 706 F.2d 111, 117 (3d Cir.), *cert. denied* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

ed, often only after they had been served gasoline, that the price was roughly sixty cents a gallon higher than the advertised mini-serve price.

Robertson was informed of all of these complaints. He reimbursed some of the customers who complained about price deception, but took no action to prevent recurrences of the deception problem. The question before us is whether the district court's conclusion that these complaints justified Mobil in not renewing Robertson's franchise [2] is supported.

## II

Although the district court suggested that the twenty-five miscellaneous complaints would have justified non-renewal, it focused its analysis on the price-related complaints because it found no evidence that Mobil would have elected not to renew Robertson's franchise on the basis of the twenty-five miscellaneous complaints alone. Because this finding is not clearly erroneous, our analysis must focus on the complaints about excessive price and price deception.

The critical issue is whether the complaints about Robertson's high prices and price deception were "bona fide" within the meaning of PMPA.[3] Robertson's approach to defining bona fide focuses on the *subject matter* of complaints. He suggests that bona fide complaints are those pertaining to the maintenance of unhealthy, unsafe or dirty premises or to illegal actions by the franchisee. He argues that complaints about matters wholly within his legal discretion, such as price-setting,[4] are not bona fide within the terms of the statute, and that the marketplace, not the franchisor, is the appropriate disciplining agent if his prices are too high.

Robertson alleges that his interpretation of PMPA is supported by the legislative history. His illustration, however, does not support his argument. He cites a Senate Report in which the slashing of tires is used as an illustration in a discussion of franchise non-renewal under PMPA, S.Rep. No. 731, 95th Cong., 2d Sess. 35 (1975), *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 894, and concludes that this is the kind of franchisee misdeed that justifies non-renewal. Robertson also cites the portion of the same Senate Report that discusses complaints about an unhealthy, unsafe or unclean environment and suggests that these too are conditions which give rise to bona fide complaints. He concludes that complaints pertaining to failure to maintain healthy, safe or clean premises or to illegal actions such as tire-slashing are the kinds of complaints congress considered "bona fide" under PMPA.

Robertson's conclusion reflects a misreading of the Senate report. The segment of the Senate Report that uses tire-slashing as an illustration plainly refers to the franchisee's obligation to take immediate corrective action in response to complaints; it sheds no light on the question of what constitutes a bona fide complaint. The portion of the Senate Report referring to unhealthy, unclean or unsafe premises clearly refers to 15 U.S.C. 2802(b)(3)(C), which establishes these conditions as *independent* grounds for non-renewal, unrelated to the basis for non-renewal invoked by Mobil pursuant to 15 U.S.C. 2802(b)(3)(B), *i.e.*, the receipt of numerous bona fide complaints. Robertson's statutory definition of bona fide as referring only to complaints about illegal deeds or failure to maintain a safe, clean and healthful premises is untenable. It is not only unsupported by legislative history, but defies common legal usage. See *Escondido Mutual Water Co. v. La*

---

2. The conditions justifying non-renewal of a franchise are less stringent than those justifying termination of a franchise. The latter are set forth in 15 U.S.C. § 2802(b)(2).

3. Appellant does not dispute that the complaints are "numerous" for the purposes of the statute. *See Blankenship v. Atlantic Richfield Co.*, 478

F.Supp. 1016 (D.Or.1979) (eighteen complaints over two year period deemed numerous); *Orr v. Texaco, Inc.*, 1980–81 Trade Cas. (CCH) 63,672 (N.D.Ga.1980) (twenty-two complaints in a year deemed numerous).

4. Mobil does not deny that Robertson has absolute discretion to set price.

*Jolla, et al,* 466 U.S. 765, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (absent clear legislative intent, statutes should not be interpreted so as to defy plain meaning); *Paskel v. Heckler,* 768 F.2d 540, 543 (3d Cir.1985) (supports same proposition).

The common legal definition of bona fide, consistent with the non-legal definition, is "[i]n or with good faith; honestly, openly, and sincerely ... Real, actual, genuine, and not feigned." *Black's Law Dictionary* (5th ed. 1979). *See also E.E.O.C. v. Westinghouse Electric Corp.,* 725 F.2d 211, 225 (3d Cir. 1983) (using "bona fide" to mean genuine in context of statutory requirement of bona fide retirement plan). Neither common usage nor the legislative history supports Robertson's contention that the "bona fide" nature of a complaint depends primarily on the subject matter of the complaint. That approach is too narrow. Accordingly, we reject his argument that only complaints referring to illegal actions or unsafe and unhealthy premises are bona fide, and his corollary contention that, because he has the legal right to set prices, complaints about high price cannot be bona fide.

At the same time, we believe that something more than the common definition of bona fide must be read into the notion of bona fide complaints under PMPA. Otherwise, inaccurate though sincere complaints would justify non-renewal and PMPA's purpose of protecting franchisees from unfair termination or non-renewal, *see* S.Rep.No. 731, 95th Cong., 2d Sess. 17–19 *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 875–77, would be defeated. Although the district court did not explicitly define "bona fide," it made some observations that we find apposite:

> None of the complaints ... appears to be the expression of somebody who's responding in a wholly bizarre way to the external world. That is to say, Mobil has not included in its dossier letters from people who, on the face of it, are deranged or obsessional, or just ready to strike out at any convenient target, including a local service station.

■ A definition of "bona fide" in PMPA that accomodates common usage and is fair to all parties is "sincere and having a reasonable basis in fact." The "basis in fact" requirement entails that the circumstance complained of does, in fact, exist, and that the franchisee can reasonably be held accountable for it. Thus the receipt of numerous sincere complaints is not ground for non-renewal if the complaints are false or if they pertain to matters about which the franchisee is not culpable, *e.g.,* policies required by the franchisor. This interpretation comports with both purposes of PMPA: protection of franchisees from arbitrary non-renewal and protection of franchisors from disruptive franchisee conduct that damages the brand name. *See Rodgers v. Sun Refining and Marketing Company,* 772 F.2d 1154, 1158 (3d Cir.1985).

### III

■ If the sole question before us were whether the complaints about Robertson's high prices justified Mobil's decision not to renew his franchise, the case would be close. The complaints about high price were indisputably sincere. In addition, notwithstanding the franchisee's legal right to set prices, it is arguable that prices totally out of line with the competition, and hence damaging to the franchisor's trade name, could justify non-renewal. In this case, the fact that Mobil forced the mini-serve island on Robertson, and as a result he had little choice but to raise the price of the full-serve, would be relevant in determining whether Robertson could be held responsible for the matter complained of. We need not, however, decide whether the price complaints were a sufficient basis for non-renewal, because many complaints about Robertson went beyond mere high price: they alleged price deception.

While the district court dealt with the complaints about high price *per se* and the complaints about price deception together, we believe it useful and appropriate to separate the two. While Robertson makes a strong argument that Mobil forced him to raise his prices, he has little excuse for

misleading customers by maintaining a huge sign posting only the price of mini-serve when the mini-serve was often not open and the price disparity with the full-serve was so great. His single reference in his brief to the many complaints about price deception is unpersuasive:

> Mobil's marketing policy was responsible for or at least partially responsible for any customer confusion that may have arisen pertaining to the price and hours of operation signs in that Mobil provided the signs and "suggested" the signs to be used.

While the mini-serve island may have put Robertson in a bind as to what price to charge if he wished to maintain a profit, there was an easy solution to the problem of price *deception*. As the district court found:

> Mr. Robertson could have prevented confusion by putting up a sign comparable with his mini-serve sign, stating what his full-serve prices were ... Not only did Mr. Robertson not do that, he did not even put the topper prices, which were the large scale numbers on top of the pumps, which might have brought the sobering facts home to his customers directly.

This finding is not clearly erroneous. There can be no doubt that the many complaints about misleading advertising were bona fide under the definition developed above: the record supports the conclusion that they were sincere and had a basis in fact. Robertson does not dispute the sincerity of the complaints (and Mobil's policy of following-up the complaints helps corroborate their sincerity). Moreover, because Robertson was in a position to rectify the deception problem, there is no question that he can reasonably be held accountable for the complaints. Thus the second part of our statutory definition of "bona fide" is met, *i.e.*, the complaints had a reasonable basis in fact. Because Mobil received roughly fifty complaints about Robertson's misleading advertising, the numerosity requirement is easily met. *See supra* note 3.

The district court found that receipt of numerous complaints about appellant's price and price deception and his failure to remedy the situation justified Mobil's decision not to renew the franchise. This finding is not clearly erroneous even if we consider complaints about deception alone. Indeed, the district court's opinion suggests that it believed the complaints about price deception would have justified non-renewal. The judgment of the district court will be affirmed.