J. BLAINE ANDERSON, Circuit Judge:
 

 Debtor, Fred Herbert (“Herbert”) appeals the order of the district court prohibiting him from assigning a petroleum franchise agreement with Atlantic Richfield Company (“ARCO”). The appeal centers around the extent to which, in a bankruptcy proceeding, the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2806 (1982), preempts otherwise applicable state law. In deciding this question, we necessarily resolve: (1) whether Herbert could assume and assign the petroleum franchise, (2) when the franchise was terminated, and (3) whether Herbert had a right to cure his monetary defaults to ARCO. Because we find the PMPA preempts otherwise applicable state law, we affirm the district court.
 

 I. BACKGROUND
 

 In December, 1983, Herbert and ARCO entered into a service station lease and a lessee-dealer gasoline agreement (collectively, the “franchise”) in which Herbert agreed to operate an ARCO service station in Santa Barbara, California. Later, Herbert experienced financial difficulty and sought to sell the franchise. On January 15, 1985, Herbert opened an escrow to assign the franchise to Mohammed H. Hussein, a nonimmigrant alien holding an H-2 visa. Closing of the escrow was contingent upon ARCO’s approval of the assignment.
 
 *891
 
 However, because of Hussein’s status as an alien, ARCO did not approve the assignment and the sale did not take place.
 

 On March 25, 1985, Herbert ran out of gasoline and closed the station for the following nine days. During this time a $9,937.39 check he had written to ARCO was returned for insufficient funds. Because of Herbert’s default on the franchise, i.e., as a result of the closure and the dishonored check, ARCO gave Herbert a PMPA notice of termination on April 3. ARCO withdrew the notice on April 10 on the condition that the insufficient funds check be cured and the station be reopened. Unfortunately, Herbert was unable to cure the check and again closed the station.
 

 On April 19, 1985, ARCO sent Herbert a second PMPA termination notice on the basis that he had again violated the franchise by closing the station. Termination was to be effective April 26. However, on April 24, two days before the effective date of the termination, Herbert filed for Chapter 11 bankruptcy relief. In the bankruptcy court, he moved, under 11 U.S.C. § 365, to assume and assign the franchise to Hussein. The bankruptcy court entered an order permitting the assumption and assignment of the franchise, finding that the termination was not effective under California state law and that it was unreasonable for ARCO to disapprove the franchise assignment. The bankruptcy court also found that even if the franchise agreement had terminated, Herbert had the right to cure his defaults under state law.
 

 ARCO appealed to the district court.
 
 [1]
 
 The district court vacated the bankruptcy court’s order, finding that the PMPA preempted state law and therefore the termination was effective on April 26. From this, the district court found that since the franchise had terminated, it could not be assigned.
 
 [2]
 
 Herbert appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and § 158(d). Although Herbert raises a number of arguments, the pivotal question in this appeal is the extent to which, in a bankruptcy proceeding, the PMPA preempts otherwise applicable state law in the termination of a petroleum franchise.
 

 II. STANDARD OF REVIEW
 

 Because we are in as good a position as the district court to review the bankruptcy court’s findings, we independently review the bankruptcy court’s decision.
 
 In re Acequia, Inc.,
 
 787 F.2d 1352, 1357 (9th Cir.1986). The bankruptcy court’s findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed
 
 de novo. In re Pizza of Hawaii, Inc.,
 
 761 F.2d 1374, 1377 (9th Cir.1985). Since the question of preemption is a conclusion of law, it is subject to
 
 de novo
 
 review.
 

 III. ANALYSIS
 

 A. Preemption
 

 After filing for Chapter 11 relief, Herbert moved the bankruptcy court for permission to assume and assign the franchise. Herbert argues he should be allowed to assume and assign the franchise to Hussein pursuant to 11 U.S.C. § 365(f).
 
 [3]
 

 
 *892
 
 While nonbankruptey state law would ordinarily control the question of whether a contract could be assumed and assigned, here the subject matter of the contract involves the marketing of petroleum products, specifically, a franchise agreement for the sale of motor fuel. As a result, the contract is subject to the PMPA.
 
 [4]
 
 The question then becomes, to what extent does the PMPA apply.
 

 The PMPA designates the extent to which it preempts state law:
 

 To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, ... no State ... may adopt, enforce, or continue in effect any provision of any law or regulation ... with respect to termination (or the furnishing of notification with respect thereto) ... of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.
 

 15 U.S.C. § 2806(a) (1982). This section provides for preemption of
 
 all
 
 state law inconsistent with the PMPA. The language in section 2806(a) makes clear the PMPA
 
 was intended to preempt all state law
 
 with respect to termination of a petroleum franchise. The legislative history also supports preemption.
 

 In recent years the friction between franchisors and franchisees in marketing of motor fuels has become so great that it has threatened adverse impacts upon the Nation’s motor fuel distribution and marketing system. Numerous States have initiated various legislative actions to address these petroleum product franchising problems. These actions have, unfortunately, resulted in an uneven patchwork of rules governing franchise relationships which differ from State to State.
 

 Needed is a single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises and the notice which franchisors must provide franchisees prior to termination of a franchise or non-renewal of a franchise relationship. Such a set of rules would clearly define the rights and obligations of the parties to the franchise relationship in the crucial area of termination of a franchise or non-renewal of the franchise relationship.
 

 S.Rep. No. 731, 95th Cong., 2d Sess. 19,
 
 reprinted in
 
 1978 U.S.CODE CONG. & ADMIN.NEWS 873, 877.
 

 In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law. The purpose of uniformity would be frustrated if the PMPA was not given its preemptory intent. Accordingly, we find the PMPA preempts all inconsistent state law. Finding preemption, we must now decide when the franchise terminated under the PMPA and whether Herbert could assume and assign the franchise.
 

 B. Termination
 

 Under 15 U.S.C. § 2802, a franchisor may terminate a franchise if the grounds are material and reasonable within subsections (b)(2) and (b)(3). Additionally, notice of termination must comply with section 2804. On April 19, 1985, ARCO gave Herbert a second notice of termination. The notice complied with section 2804: it was in writing, posted by certified mail,
 
 *893
 
 and contained the grounds for termination and the effective date. The grounds for termination were permissible under section 2802, i.e., failure to carry out the provisions of the franchise by keeping the station open and failure to honor debts owing the franchisor.
 
 [5]
 

 In order for the franchise to be assumable under section 365(f), the franchise agreement must have been an “executory contract” at the time the bankruptcy petition was filed. Under state law, as long as there remains any part of a contract which is unperformed, the contract is executory. The term “executory” in the bankruptcy context, however, has a more limited meaning in light of the purpose for which the trustee is given the option to assume or reject the contract. That purpose is to benefit the estate.
 
 See
 
 2
 
 Collier on Bankruptcy
 
 ¶ 365.01 (15th ed. 1986). As we have held, an executory contract in the bankruptcy context exists where the obligations of the parties “are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.”
 
 In re Pacific Express, Inc.,
 
 780 F.2d 1482, 1487 (9th Cir.1986) (citing Countryman,
 
 Executory Contracts in Bankruptcy: Part I,
 
 57 Minn.L.Rev. 439, 460 (1973)). In this, we hasten to add that even though “the contracts were eventually declared terminated ... is irrelevant to the question of their executory nature. At the time of adjudication, the contracts were not ones ‘which call for performance in futuro,’ and were therefore not exec-
 
 utory_” Crittenden v. Lines,
 
 327 F.2d 537, 543 (9th Cir.1964).
 

 At the time the bankruptcy petition was filed on April 24, neither party owed future performance.
 
 [6]
 
 There is no allegation that ARCO did not live up to its responsibilities under the franchise. Fuel and other products were delivered to Herbert. Even though payment from Herbert was still due, ARCO had substantially performed, and no future failure to perform on ARCO’s part would have excused Herbert from his obligation to make good on the bad check.
 
 See In re Pacific Express, Inc.,
 
 at 1487-88. From the time ARCO substantially performed the franchise agreement, it ceased to be an executory contract.
 
 See In re Cochise College Park, Inc.,
 
 703 F.2d 1339, 1348 (9th Cir.1983);
 
 In re Select-A-Seat Corp.,
 
 625 F.2d 290, 292 (9th Cir.1980) (per curiam). Since the contract was not executory within the meaning of section 365(f), it follows that it was not assumable or assignable.
 
 [7]
 

 Herbert contends the PMPA is not the applicable law in determining the franchise termination. He argues the franchise was assumable because the California unlawful detainer statute, Cal. Civil Proc. Code § 1179,
 
 [8]
 
 provides a right to cure de
 
 *894
 
 faults and avoid forfeiture and, therefore, the franchise was subject to revival and was not terminated on April 24. Herbert cites
 
 In re Fontainebleau Hotel Corp.,
 
 515 F.2d 913 (5th Cir.1975), to support his proposition. In making this argument, Herbert seeks to answer the preemption question by alleging the PMPA is limited to franchise termination and proper notice procedures. Therefore, he posits, state law governs with respect to repossession and, hence, the opportunity to revive and assume the contract.
 

 We find Herbert’s argument specious. The antiforfeiture argument is simply another way of restating the argument that the PMPA does not preempt state law. Of the cases cited by Herbert, including,
 
 In re Fontainebleau Hotel Corp.,
 
 515 F.2d 913 (5th Cir.1975) (hotel lease with termination incomplete);
 
 In re University Cafeteria, Inc.,
 
 47 B.R. 404 (W.D.Va.1985) (business premises lease); and
 
 In re Furniture Warehouse Sales, Inc.,
 
 2 B.R. 293 (Bkrtcy.N.D.Ga.1980) (warehouse lease), none deal with contracts subject to preempting federal law. While it is true the PMPA contains no repossession provision, this does not lead to the conclusion that termination and assumption of the franchise are not preempted. The procedural requirements for franchise termination are set forth in the PMPA. In this area the PMPA preempts all state law. If a franchisee happens to remain in possession after termination, then the franchisor may resort to state unlawful detainer law to regain possession. But this does not mean that state law controls with respect to franchise termination and assumption of the contract.
 
 See, e.g., Huth v. B.P. Oil, Inc.,
 
 555 F.Supp. 191 (D.Md.1983) (PMPA preempts state statutes and common law actions for termination);
 
 Exxon v. Georgia Ass’n of Petroleum Retailers,
 
 484 F.Supp. 1008 (N.D.Ga.1979),
 
 aff'd,
 
 644 F.2d 1030 (5th Cir.1981) (state termination and nonrenewal statute preempted by the PMPA);
 
 Di Napoli v. Exxon Corp.,
 
 549 F.Supp. 449 (D.N.J.1982) (state termination statute preempted).
 

 C. Cure Rights
 

 As part of the repossession argument, Herbert contends that since the PMPA provides no method for a franchisor to regain possession of the leased property after termination, state law, in filling in this gap, may provide cure rights which the Act does not. He argues this is consistent with the purpose of the Act since it protects franchisees from arbitrary termination.
 

 It is clear the PMPA, section 2806, and the legislative history demonstraté state law is preempted with respect to franchise termination. Additionally, section 2802 also provides some cure rights.
 
 See, e.g.,
 
 section 2802(b)(2)(B). We believe because the Act provides cure rights for some conduct and not others, cure rights which exist under state law were intentionally preempted-under section 2806, but left uncovered by the Act. This approach is consistent with the court in
 
 Huth
 
 which stated:
 

 “Plaintiffs might argue that § 2806 only preempts state statutes expressly regulating the petroleum franchisor-franchisee relationship and does not address generalized statutes and common law doctrines being specifically applied to such a relationship. However, the relevant legislative history points to an opposite conclusion_ Conflicting application of a common law rule ... disrupts the ‘uniform guidelines’ of the PMPA
 
 *895
 
 just as much as a specific state regulatory statute would.”
 

 555 F.Supp. at 194 (citing S.Rep. No. 731, 95th Cong., 2nd Sess. 19, 42-43,
 
 reprinted, in
 
 1978 U.S.CODE CONG. & ADMIN. NEWS 873, 877, 901).
 
 See also Moody v. Amoco Oil Co.,
 
 734 F.2d 1200, 1212-13 n. 10 (7th Cir.1984),
 
 cert. denied,
 
 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) (stating any right to cure to prevent termination provided by state law has been preempted by the PMPA).
 
 Cf. Wisser Co., Inc. v. Mobil Oil Corp.,
 
 730 F.2d 54, 59 (2d Cir.1984).
 

 D. Equity
 

 Finally, Herbert argues that even if California state law is preempted, the bankruptcy court had the equitable power to refuse to honor the termination and grant an equitable right to cure the default. While we acknowledge the bankruptcy court has authority to invoke equitable relief, we find the equities do not justify such action here. Herbert first received notice of termination on April 3. This notice was later withdrawn based upon Herbert’s promise to honor the bounced checks and reopen the station. He failed to do either. A second notice was given. The notice complied with the PMPA notice requirements and stated the reasons for termination. Given these occurrences, the bankruptcy court had little basis in equity to permit Herbert to assume and assign a franchise which was already terminated.
 

 IV. CONCLUSION
 

 The- district court properly vacated the order of the bankruptcy court. The PMPA preempted the otherwise applicable California law. Under the PMPA, the franchise was terminated at the time the bankruptcy petition was filed. There was no contract to assume and no cure rights were available.
 

 Accordingly, the district court’s order is
 

 AFFIRMED.
 

 [1]
 

 . We have been informed that ARCO has possession of the service station and has been operating it through a subsidiary pursuant to an agreement between the parties during the pendency of this action.
 

 [2]
 

 . Based on its findings under the preemption question, the district court did not reach the issues of whether: (1) assumption of the franchise without curing default, and (2) assignment to a nonimmigrant alien holding an H-2 visa, were improperly allowed.
 

 [3]
 

 . Section 365(f) provides:
 

 (f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
 

 (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
 

 (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
 

 (B) adequate assurance of future performance by the assignee of such contract or
 
 *892
 
 lease is provided, whether or not there has been a default in such contract or lease.
 

 (3) Notwithstanding a provision in an exec-utory contract or unexpired lease of the debt- or, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.
 

 [4]
 

 . There is no question the PMPA covers the subject matter of the contracts involved here, including the service station lease and the gasoline agreement.
 
 See
 
 15 U.S.C. § 2801(1)(A), (B), designating both contracts as the "franchise.”
 

 [5]
 

 . While we make these observations generally from the record before us, we point out that Herbert did not argue in the bankruptcy court that the PMPA notice and termination requirements were not complied with. Hence we will not address these questions on appeal.
 

 [6]
 

 . We assume, for purposes of this opinion, that ARCO either had no obligation to deliver gasoline or otherwise perform during the two days prior to the termination date, or that such obligation was de minimus.
 

 However, even if the franchise agreement was executory on the date of filing, it had by then a duration of only two days. During that short period, the agreement, if executory, was still in existence and therefore possibly assignable — albeit only to the extent of its foreshortened duration.
 
 See Moody v. Amoco Oil Co.,
 
 734 F.2d 1200, 1213 (7th Cir.1984). But here the agreement expired prior to any attempt by the trustee to assign it. Thus at the time of the purported assignment, there was no agreement to assign.
 

 [7]
 

 . Under the Bankruptcy Code, the statute disallowing assumption, 11 U.S.C. § 365, provides:
 

 (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
 

 [[Image here]]
 

 (3) such lease of nonresidential real property has been terminated under applicable non-bankruptcy law prior to the order for relief.
 

 [8]
 

 . The California Unlawful Detainer Statute, Cal. Civ.Proc.Code. § 1179, provides:
 

 The Court may relieve a tenant against a forfeiture of a lease, and restore him to his former estate, in case of hardship, where application for such relief is made within thirty
 
 *894
 
 days after the forfeiture is declared by the judgment of the Court, as provided in section one thousand one hundred and seventy-four. The application may be made by a tenant or sub-tenant, or a mortgagee of the term, or any person interested in the continuance of the term. It must be made upon petition, setting forth the facts upon which the relief is sought, and be verified by the applicant. Notice of the application, with a copy of the petition, must be served on the plaintiff in the judgment, who may appear and contest the application. In no case shall the application be granted except on condition that full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made.