HUMBOLDT OIL CO., INC. and J.R. Mastelotto, Plaintiffs,

v.

EXXON COMPANY, U.S.A., Defendant.

EXXON COMPANY, U.S.A., Cross-Complainant/Appellant/Appellee,

v.

HUMBOLDT OIL COMPANY, INC. and J.R. Mastelotto, Cross-Defendants/Appellees/Appellants,

and

Bonus International Corporation, Cross-Defendant/Appellee.

Nos. 86–1916, 86–1956.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1987.

Decided July 30, 1987.

Peter L. Spinetta, Oakland, Cal., for plaintiffs/cross - defendants/appellees/appellants.

John R. Reese, San Francisco, Cal., for defendant/cross-complainant/appellant/appellee.

Before SKOPIL, FARRIS and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

Exxon appeals a $750,000 judgment for damages for violation of California Business and Professions Code § 21148 entered on a jury verdict for Humboldt/Mastelotto/Bonus. Humboldt/Mastelotto cross-appealed. Because we find that application

of such statute is preempted by federal law, we reverse the judgment for Humboldt/Mastelotto/Bonus and dismiss the cross-appeals.

## BACKGROUND

Jerry Robert Mastelotto and his corporation, Humboldt Oil ("Humboldt/Mastelotto"), purchased Exxon products under franchise agreements for resale. Mastelotto and Bonus International ("Bonus"), another of his corporations, executed security agreements as guarantors of the Exxon purchases. In 1981 Mastelotto was convicted of fraud in the sale of mislabeled and misbranded motor oil. *United States v. Mastelotto*, No. 80–0454–01 (N.D.Cal. 1983); *see Humboldt Oil Co. v. Exxon*, 532 F.Supp. 896, 898 (D.Nev.1982). Because of the conviction, Exxon terminated its franchise agreement pursuant to the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(12) (1982). Humboldt/Mastelotto began the present action when they secured a preliminary injunction enjoining the termination. *Humboldt v. Exxon*, 532 F.Supp. at 901. That injunction was vacated by this court. *Humboldt v. Exxon*, 695 F.2d 386, 389–90 (9th Cir.1982).

Mastelotto alleged that Exxon orally agreed to assignment of the franchise, which was prohibited in the written instrument. However, when Mastelotto offered the franchise to Exxon under a franchise agreement right-of-first refusal, Exxon did not accept.

Mastelotto planned to sell and to assign the franchise to Steve Beneto, with whom he had a collateral agreement under which Mastelotto would purchase petroleum products for retail resale. Mastelotto would thus remain an Exxon dealer.

After the franchise termination notice, Mastelotto/Humboldt stopped paying for petroleum products received and ultimately owed Exxon $816,000. Exxon filed a cross-complaint for money due, joining Bonus as defendant guarantor. Humboldt/Mastelotto cross-sued alleging, *inter alia,* Exxon's breach of an oral contract to accept an assignment of Humboldt/Mastelotto's distributorships, intentional interference with prospective economic advantage, and violation of the California Franchise Dealers' Fair Practices Act, Cal.Bus. & Prof.Code § 21148 (West 1987).

A three-day jury trial on the cross-claims resulted in an $816,000 verdict for Exxon for the amount due it for the products Humboldt/Mastelotto had received. The same jury awarded Humboldt/Mastelotto $1 each on their claims for breach of contract and intentional interference with prospective business relationships. On the claim under the California Franchise Dealers' Fair Practices Act, Cal.Bus & Prof. Code § 21148, the jury awarded Humboldt/Mastelotto damages of $750,000. The court offset the awards. From this finding Exxon appeals.

## JURISDICTION

Jurisdiction of the district court is based upon diversity, 28 U.S.C. § 1332, and PMPA, 15 U.S.C. § 2805. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review the interpretation of federal and state laws, including the preemption issue, *de novo. Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir 1984) (en banc); *Atlantic Richfield Co. v. Herbert*, 806 F.2d 889, 891 (9th Cir.1986).

## ANALYSIS

■ The Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2802 *et seq.*, was intended to provide a single, uniform set of rules governing termination and non-renewal of petroleum franchises to reduce friction between franchisors and franchisees in marketing of motor fuels. S.Rep. No. 731, 95th Cong., 2d Sess. 19 (hereinafter S.Rep.), *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 877. *See Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191, 194 (D.Md.1983). State law relating to franchise termination is specifically preempted. 15 U.S.C. § 2806(a). "In enacting the PMPA, Congress attempted to

provide national uniformity of petroleum franchise termination law. The purpose of uniformity would be frustrated if the PMPA was not given its preemptory intent. Accordingly, we find the PMPA preempts all inconsistent state law." *Herbert*, 806 F.2d at 892.

 Congress did not intend either to authorize or to prohibit franchise assignments, but, as a general rule, left the matter to state law. S.Rep., *supra* at 901. However, the legislative history indicates that Congress anticipated potential conflict between federal termination and state assignment provisions and suggested a method of reconciliation:

> For example, it is not intended that a franchisee may avoid the consequences of his own conduct which gave rise to a notice of termination or nonrenewal by merely assigning his franchise after having been notified by the franchisor of the franchisor's intent to terminate or fail to renew. Such a result would not be countenanced under general principles of equity.

*Id.* To the extent that the applications of state law frustrate federal objectives, they are preempted. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). *See also Herbert*, 806 F.2d at 892 (PMPA preempts inconsistent state law). We are directed to harmonize the competing interests on a case-by-case basis. S.Rep., *supra* at 901.

 In this case, allowing Mastelotto to assign his franchise rights to Beneto (with whom he had a collateral agreement whereby Mastelotto would remain an Exxon dealer) would effectively deny Exxon its PMPA right to disassociate itself from Mastelotto. *See* 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(12) (permitting termination of a franchise agreement if franchisee is convicted of a crime involving moral turpitude). California law authorizing treble damages for refusal to accept assignment of a petroleum franchise under notice of termination when that assignment would

effectively avoid termination clearly is an obstacle to accomplishment of Congress' undisputed interest in a national, uniform policy for petroleum franchise termination. Therefore, we conclude that in this situation PMPA preempts California law. Accordingly, judgment for Humboldt/Mastelotto under Cal.Bus. & Prof.Code § 21148 is reversed and their cross-appeals are dismissed.

Since we dispose of this case on preemption grounds, we do not reach other issues raised by the parties. We remand to the district court for vacation of its order offsetting judgments.

REVERSED and REMANDED.