**Rose MARKS, d/b/a Middlebelt-Eureka Shell, Plaintiff,**

v.

**SHELL OIL COMPANY, a Delaware corporation, Defendant.**

**No. 85-CV-75082-DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 17, 1986.

---

James Wines, Ann Arbor, Mich., for plaintiff.

Thomas V. Giles, Birmingham, Mich., Thomas P. Beery, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This case was brought by plaintiff pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.*, seeking damages for the alleged wrongful termination of plaintiff's franchise relationship with defendant. The case is presently before the Court on defendant's motion for summary judgment.

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is enti-

tled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States v. Diebold*, 368 U.S. 894, 82 S.Ct. 171, 7 L.Ed.2d 91 (1962); *Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

On November 31, 1981, plaintiff, Rose Marks, entered into a lease agreement with defendant, Shell Oil Company, for the use of certain premises as a motor fuel station. On that same day, Marks also entered into a dealer franchise agreement with Shell that granted, among other things, the right to use the "Shell" trademark at the station as well as to market and sell products of the Shell Oil Company. The terms of both the lease agreement and the dealer franchise agreement were for the period beginning on December 1, 1981 and ending on November 30, 1984.

Shell, however, was not the outright owner of the property leased to Marks. The property leased to Marks by Shell was itself subject to a "base lease," entered into on June 10, 1969, between Shell and a third party. The base lease setting forth the rights of Shell commenced its primary term on January 1, 1970, for a term of sixteen years, expiring on December 31, 1985. In addition, the base lease granted to Shell the option to renew the base lease for three additional periods of five years. These options to renew were exercisable by Shell upon providing notice to the base lessors at least 45 days prior to the expiration of the primary lease term.

On November 27, 1984, Shell notified Marks as to the existence of the base lease. Marks was advised that Shell did not own the property on which the station was located and that the base lease would expire on December 31, 1985. Marks was further advised that, depending on whether or not Shell chose to renew the base lease, the dealer lease and franchise agreements between Shell and Marks may or may not be renewed. Nevertheless, on the same day, November 27, 1984, Marks elected to renew the dealer lease and franchise agreements for the period from December 1, 1984 through December 30, 1985.

On August 1, 1985, Shell notified Marks that it did not intend to renew the base lease and that the dealer lease and franchise agreements between the parties would expire on December 30, 1985. As a reason for the nonrenewal, Shell cited the expiration or termination of the underlying lease.

Plaintiff, Marks, thereafter commenced the instant lawsuit on October 30, 1985. By way of the Complaint, Marks does not allege a breach of any terms of the dealer lease or franchise agreements. Rather, Marks alleges that Shell acted in bad faith and with retaliatory and impermissible discriminatory motives in the termination of the franchise relationship. On December 26, 1985 the Court denied plaintiff's motion for preliminary injunction. The instant motion for summary judgment was filed on July 1, 1986.

■ This case is governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.*. The primary purpose behind the Act is to protect gasoline distributor franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises. *Kostantas v. Exxon Corp.*, 663 F.2d 605 (5th Cir.1981), *cert. denied*, 456 U.S. 1009, 102 S.Ct. 2302, 73 L.Ed.2d 1305 (1982); *L.C. Williams Oil Co., Inc. v. Exxon Corp.*, 627 F.Supp. 864 (M.D.N.C. 1986); *Slatky v. Amoco Oil Co.*, 626 F.Supp. 1223 (M.D.Pa.1986). The fundamental jurisdictional requirement to bring an action under the Act is the termination or failure to renew a franchise, and without such action there is no justiciable case or controversy. *Halder v. Standard Oil Co.*, 642 F.2d 107 (5th Cir.1981); *Naso v. Sun Refining & Marketing Co.*, 582 F.Supp.

1566 (N.D.Oh.1983). The Act preempts state regulation of the termination or non-renewal of such franchise relationships. 15 U.S.C. § 2806(a).

▮ In an action brought under the Act, the franchisee has the burden of proving the termination or nonrenewal of the franchise. The franchisor then has the burden of going forward with evidence sufficient to establish that the termination or nonrenewal was permitted under the Act. 15 U.S.C. § 2805(b); *Lippo v. Mobil Oil Corp.*, 776 F.2d 706 (7th Cir.1985). Here, there is no dispute as to Shell's nonrenewal of the base lease and the franchise relationship with Marks. The sole question then is whether such nonrenewal was permissible or, alternatively, an action which is forbidden by the Act.

The Act sets forth general ground rules for the termination or nonrenewal of franchise relationships. Among the various circumstances allowing termination or nonrenewal is the following:

> The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence:
>
> (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to Section 2804(a) of this title;

15 U.S.C. § 2802(b)(2)(C). The Act then sets forth certain "events," as described above, that are sufficient to make a termination or nonrenewal reasonable:

> Loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise: (A) of the duration of the underlying lease, and (B) of the fact that such underlying lease might expire and not be re-

newed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal) . . .

15 U.S.C. § 2802(c)(4).

Therefore, under the Act, nonrenewal or termination of a franchise is explicitly made permissible provided that proper notice is given. Stated simply, the notice provisions of the Act require that there be a loss of the franchisor's right to grant possession through the expiration of the underlying lease. The franchisee must have received written notification from the franchisor, prior to the commencement of the franchise period, of the duration of the underlying base lease and notice that the base lease might expire and not be renewed.

▮ In this case, Shell has satisfied the notice requirements. Shell sent Marks written notification of the underlying lease on November 27, 1984. The letter states in pertinent part:

> "This is to advise that Shell does not own the land on which the above station is located, but it leases such land from a third party under an underlying lease which, by its terms will expire on December 31, 1985 or is otherwise subject to termination on such date. Accordingly, you are advised that Shell's underlying lease might expire or end on such date and not be extended or renewed, with the result that, depending on the above ending date of the Lease and Agreement, the Lease and Agreement (a) may be terminated during their terms, (b) may not be renewed, or (c) may be renewed for a limited duration only."

Nevertheless, Marks executed a new Lease and Agreement on the same day, November 27, 1984. On August 1, 1985, Shell notified Marks that it would not be renewing the Lease and Agreement due to the loss of Shell's right to grant possession of the premises because of the expiration or other termination of the underlying lease. Based on these uncontested facts, then,

Shell provided the requisite notice prior to the commencement of the franchise term.

Notwithstanding the above, Marks argues that Shell had "knowledge" of the "occurrence" (i.e. the impending nonrenewal of the franchise relationship) more than 120 days prior to the time at which Marks received notice thereof—thereby rendering the nonrenewal impermissible under the Act. *See* 15 U.S.C. § 2802(b)(2)(C)(i), *supra.* The Court, however, finds this argument unpersuasive. As noted by other courts who have considered this argument, the 120 day requirement was intended by Congress to force a franchisor to make a quick decision when confronted with events such as fraud, bankruptcy or illness that might reasonably be found to constitute an adequate basis for franchise termination. By requiring rapid notice (i.e. within 120 days) in the face of a lease-terminating event, the franchisee is safeguarded from stale accusations. At the same time, the franchisor is prevented from reaching into the distant past for a colorable basis as a subterfuge or "front" for terminating a franchise for otherwise impermissible reasons. In other words, the 120 day notice requirement prevents a franchisor from doing indirectly what he could not accomplish directly. *See, e.g., Veracka v. Shell Oil Co.,* 655 F.2d 445, 449–50 (1st Cir.1981); *Graeber v. Mobil Oil Corp.,* 614 F.Supp. 268, 273–74 (D.N.J.1985); *Gaspar v. Chevron Oil Co.,* 490 F.Supp. 971, 975 (D.N.J. 1980).

In contrast to easily ascertainable franchise-terminating occurrences (fraud, bankruptcy, etc.), the decision whether or not to renew a base lease as in the case *sub judice* is not an ascertainable "occurrence" capable of activating the 120 day notice provision. As the *Veracka* court aptly noted, "[t]o apply the 120 day requirement to the nonrenewal of a base lease would promote, as in this case, a search for a single 'nonrenewing occurrence' during the fran-

chise period. Yet, often there will be no such single occurrence and the effort to find one will simply promote unresolvable controversy." 655 F.2d at 450.

■ Simply stated, the Court concurs with the weight of authority and holds that the 120 day requirement of 15 U.S.C. § 2802(b)(2)(C)(i) has no application to a situation where the decision whether or not to renew a base lease is at issue. As such, since Shell indisputably provided notice of the base lease expiration upon entering the franchise relationship, 15 U.S.C. § 2802(c)(4) and, further, since Shell notified Marks of its decision not to renew within the time prescribed by the Act, 15 U.S.C. § 2804, the Court concludes that the notice provided by Shell was effective within the meaning of the Act.[1]

Next, Marks argues that, even if notice was given, Shell's nonrenewal of the franchise relationship was retaliatory or, alternatively, a result of sex discrimination. The Court, however, finds no support for these allegations.

■ As a threshold matter, it should be noted that the Act itself does not set forth any "good faith" requirement on a franchisor's decision not to renew or to terminate a franchise relationship. Nevertheless, the courts in general have read such a requirement into the Act. To this end, a decision to terminate a franchise will be respected as long as it is made in good faith and in the normal course of business. *Roberts v. Amoco Oil Co.,* 740 F.2d 602 (8th Cir.1984); *Brach v. Amoco Oil Co.,* 677 F.2d 1213 (7th Cir.1982). The "good faith" requirement is intended to protect the franchisee from arbitrary or discriminatory franchise termination. *Siecko v. Amerada Hess Corp.,* 569 F.Supp. 768 (E.D. Pa.1983); *Baldauf v. Amoco Oil Co.,* 553 F.Supp. 408 (W.D.MI 1981), *aff'd* 700 F.2d 326 (6th Cir.1983). At the same time, how-

---

1. The Court further finds unpersuasive, plaintiff's allegations that notice was not effective because the letter sent by Shell was signed by an individual without authority to accomplish a termination or nonrenewal. Even if this were true, however, the Court nonetheless finds that Marks was, at the very least, on inquiry notice of an impending nonrenewal such that the notice provisions of the Act were satisfied.

ever, the Court is not to substitute its judgment for the business decisions of a franchisor. *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088 (E.D.MI 1983). A franchisor is under no duty to take affirmative steps to renew or continue a franchise relationship. *Lugar v. Texaco, Inc.*, 755 F.2d 53 (3d Cir.1985).

█ Notwithstanding the judicially-divined good faith requirement, Marks has failed to demonstrate that Shell's nonrenewal of the base lease was made with evil intent. Although Marks alleges that Shell's nonrenewal was in retaliation for, among other things, her failure to purchase Shell products, Marks has produced no evidence thereof besides mere allegations. Similarly, the bare claim of sex discrimination suffers from the identical malaise. Despite these issues having been filtered through discovery for approximately one year, Marks has failed to come forward with any evidence, by affidavit, deposition, document or otherwise, which would support her claims of retaliatory or discriminatory nonrenewal.

The party opposing a motion for summary judgment is required by Rule 56(e) to set forth specific facts showing that there is a genuine issue for trial, and may not rest on the mere allegations or denials of his pleadings. *Anderson v. Liberty Lobby,* — U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In deciding a motion for summary judgment, the Court must consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 106 S.Ct. at 2512. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 2511.

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be a *genuine* issue of *material* fact. [Emphasis in original].

*Id.* at 2510.

However, the trial court ought to proceed with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Id.* at 2614. The authority of the court to take a case away from the jury is limited, with all doubts to be resolved in the non-movant's favor.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Id.* at 2513.

In this case, there is no evidence that Shell's decision not to renew the Marks franchise was anything but a legitimate business decision.[2] *See, e.g.,* Ravella Aff. ¶¶ 10, 12; Exhibit 12 to attachment to plaintiff's response to Shell's motion for summary judgment. This being the case, the Court finds plaintiff's assertions of retaliation and discrimination to be without merit.

Accordingly, the Court finding no violation of the Petroleum Marketing Practices Act, defendant's motion for summary judgment is hereby GRANTED as to this claim. Plaintiff's remaining state law claims are hereby DISMISSED without prejudice under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16

---

**2.** Indeed, the courts have upheld decisions to terminate for a franchisee's failure to abide by a wide variety of requirements. *See, e.g., Malone v. Crown Central Petroleum Corp.*, 474 F.Supp. 306 (D.Md.1979) (minimum gallonage requirement upheld); *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088 (E.D.MI 1983) (24 hour operation requirement upheld); *Weisenburger v. Amoco Oil Co.*, 534 F.Supp. 673 (D.N.D.1982) (clean and attractive premises requirement upheld); *Cantrell v. Exxon Co.*, 574 F.Supp. 313 (M.D.Tenn. 1983) (timeliness of rent requirement upheld).

L.Ed.2d 218 (1966). This action is hereby DISMISSED.

IT IS SO ORDERED.