**Jack ATKINS, Plaintiff**

v.

**CHEVRON USA INC., a California corporation, Defendant.**

**No. C87–890D.**

United States District Court, W.D. Washington.

Oct. 1, 1987.

David Shannon, Howard E. Bundy, Bundy, Meyer & Home, Bellevue, Wash., for plaintiff.

William Helsell, Craig McIvor, Helsell, Fetterman, Seattle, Wash., for defendant.

## ORDER

DIMMICK, District Judge.

The Court has before it defendant's motions for summary judgment and to strike certain evidence, and plaintiff's motions for preliminary injunction and to exclude inadmissible evidence.

Having heard oral argument and considered the memoranda and affidavits submitted by counsel, the Court concludes that defendant Chevron is entitled to summary judgment on all counts.

## FACTS

Atkins has operated a Chevron station since 1967. Chevron leased the subject property from the owner for ten years beginning in 1966, with options to extend for two additional five-year periods. Chevron's final renewal extended its leasehold until June 30, 1987. Atkins operated the station under a series of dealership agreements with Chevron containing subleases, the last of which was effective from December 1, 1984, through June 30, 1987. On July 26, 1984, Chevron informed Atkins by letter that its lease agreement with the property owner might expire and not be renewed at the end of the term. By a letter of March 4, 1987, Chevron informed Atkins of its decision not to renew the lease when it expired on June 30, 1987.

Atkins alleges that he and 20 other Chevron franchisees who attended a meeting on January 14, 1987, were informed by Chevron's marketing manager that several franchise agreements would not be renewed, but that improvements would be offered for sale at 50% of the replacement cost. When Atkins asked Chevron to sell him the improvements, Chevron responded by a letter stating that it was not legally required to sell the improvements and that it would not do so. Atkins alleges that Chevron plans to build a higher volume, company-owned station in the same area and is driving him out of business in order to appropriate the goodwill that he developed.

Atkins alleges that Chevron's failure to renew his franchise violated the federal Petroleum Marketing Practices Act ("PMPA"), the Washington Franchise Investment Protection Act ("FIPA"), the Washington Consumer Protection Act ("CPA"), the common law of contracts, and the implied covenant of good faith and fair dealing.[1]

## ANALYSIS

### A. The Petroleum Marketing Practices Act

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Doubts as to the existence of a genuine issue should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The moving party's burden may be discharged by showing the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986).

Atkins contends that Chevron violated the PMPA because it gave improper notice of nonrenewal, because the lease expiration was a sham used by Chevron to justify nonrenewal of Atkins' franchise, because Chevron has not lost the right to grant possession of the premises, and because the nonrenewal was not reasonable. The Court finds that Chevron complied with the PMPA and is entitled to summary judgment.

---

1. On June 29, 1987, Judge Rothstein issued a temporary restraining order prohibiting Chevron from

    (a) Removing, damaging, selling or destroying the improvements that are part of the leased marketing premises, and (b) otherwise disturbing the status quo as between the parties, unless otherwise agreed in writing by the parties.

### 1. Notice

Atkins argues that Chevron was required to give notice of nonrenewal within 120 days of its decision not to renew the lease. 15 U.S.C. § 2802(b)(2)(C) [2] Atkins contends that that decision was made at least a year before giving notice of nonrenewal to Atkins.

Chevron argues that, in the context of a non-renewal based on a lease expiration, the 120–day rule does not apply. Instead, Chevron argues, it is required to comply with the notice provisions of 15 U.S.C. § 2802(c)(4)(A), (B), which refer specifically to nonrenewals based on expiration of the underlying lease. Under those provisions, Chevron was required to notify Atkins, before commencement of the last franchise agreement, of "the duration of the underlying lease, and ... that such underlying lease might expire and not be renewed...." Chevron argues that this notice requirement was met by its letter to Atkins of July 26, 1984, informing him that the lease might expire. Chevron also contends that it met the general notice provisions contained in 15 U.S.C. § 2804(a). That section states:

> Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee ... not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

Chevron states it complied with this notice requirement, since its March 4, 1987 notice of nonrenewal was sent more than 90 days before the nonrenewal was to take effect (June 30, 1987).

Atkins cited no authority in support of his argument for the 120–day notice requirement. The cases cited by Chevron

are persuasive. In *Veracka v. Shell Oil Co.*, 655 F.2d 445 (1st Cir.1981), the court observed that the specific notice requirement contained in 15 U.S.C. § 2802(c)(4)(A), (B) was meant to supplant the more general notice requirements. The court declined to apply the 120–day notice requirement, stating

> To apply the 120–day requirement to the non-renewal of a base lease would promote ... a search for a single "non-renewing occurrence" during the franchise period. Yet, often there will be no such single occurrence and the effort to find one will simply promote unresolvable controversy.

*Id.* at 450. *See also Marks v. Shell Oil Co.*, 643 F.Supp. 1050, 1054 (E.D.Mich.1986) (holding that 120–day requirement does not apply; instead, notice is governed by §§ 2802(c)(4) and 2804); *Bernardini v. Exxon Corp.*, 1981–1 CCH Trade Cases, paragraph 63,921 (E.D.Pa.1981); *Gaspar v. Chevron Oil Co.*, 490 F.Supp. 971, 975 (D.N.J.1980).

The question of which notice provisions to apply requires no factual inquiry. The weight of authority supports Chevron's position that it gave proper notice of nonrenewal. This Court concludes that the 120–day rule does not apply where nonrenewal is based on lease expiration, and that Chevron complied with the notice requirements of 15 U.S.C. §§ 2802(c)(4)(A), (B) and 2804(a).

### 2. Lease Expiration as Justification for Nonrenewal of Atkins' Franchise

Atkins argues that the lease expiration was a sham, and that Chevron's actions really fall under § 2802(b)(3)(D). Section 2802(b)(3)(D) requires Chevron, after having made a good faith determination that renewal of Atkins' franchise would be un-

---

**2.** Termination or nonrenewal of a franchise is permitted under 15 U.S.C. § 2802(b)(2)(C) upon

> The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

> (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to § 2804(a) of this title; or
> (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to § 2804(b)(1) of this title.

economical, to offer to sell Chevron's interest in the leased premises to Atkins. Numerous cases have held that a franchisor may choose between applicable sections of the PMPA,[3] and owes no duty to sell the premises to the franchisee or to preserve a purchase option for the franchisee. *Hifai v. Shell Oil Co.*, 704 F.2d 1425 (9th Cir. 1983) (although Shell's reason for nonrenewal was economic, it was entitled to base the nonrenewal on the expiration of the underlying lease, even though it had the option to renew the lease); *Veracka v. Shell Oil Co.*, 655 F.2d 445 (1st Cir.1981) (held that Shell was entitled to refuse renewal of the franchise because the underlying lease expired, even though Shell took affirmative steps to stop the automatic extension of the lease); *Marks v. Shell Oil Co.*, 643 F.Supp. 1050 (E.D.Mich.1986) ("A franchisor is under no duty to take affirmative steps to renew or continue a franchise relationship." citing *Lugar v. Texaco, Inc.*, 755 F.2d 53 (3rd Cir.1985)); *Ohandjanian v. Mobil Oil Corp.*, 1985 CCH Bus. Franchise Guide, paragraph 8249 (C.D.Cal.1984) (franchisor need not have good faith business reason for permitting a lease to expire and basing nonrenewal on the lease expiration); *Bernardini v. Exxon Corp.*, 1981–1 CCH Trade Cases, paragraph 63,921 (E.D. Pa.1981) (the expiration of the underlying lease is a legitimate ground for nonrenewal, and may be relied on independently of the other justifications specified in the PMPA).

■ This Court concludes that, even if Chevron's motives were economic, it was entitled to base its nonrenewal of Atkins' franchise upon expiration of the underlying lease.[4]

### 3. Loss of the Right to Grant Possession of the Premises

■ Atkins argues that 15 U.S.C. § 2802(c)(4), which permits nonrenewal based on the franchisor's loss of the right to grant possession, does not apply because Chevron has not lost the right to grant possession of the premises. This is so, Atkins contends, because Chevron still owns the building and improvements on the land.[5] Atkins' interpretation of § 2802(c)(4) is incorrect. That section states that an event which is relevant to the franchise relationship and which makes nonrenewal of the relationship reasonable includes "loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease...." The fact that Chevron still owns the improvements does not negate the fact that it has lost the "right to grant possession of the *leased* marketing premises...." 15 U.S.C. § 2802(c)(4) (emphasis added). Only the land was leased by Chevron. By the terms of § 2802(c)(4), the loss of the right to grant possession of the land was an event justifying nonrenewal.

### 4. The Reasonableness of Chevron's Nonrenewal of Atkins' Franchise

■ Atkins requests this Court to examine the reasonableness of Chevron's decision not to renew his franchise. However, when nonrenewal is based on expiration of the underlying lease, courts have declined to weigh the reasonableness of the franchisor's decision. *Lugar v. Texaco, Inc.*, 755 F.2d 53, 58 (3rd Cir.1985) (holding that since Texaco's non-renewal was based on expiration of the lease, the court could not evaluate the reasonableness of the non-renewal); *Marks v. Shell Oil Co.*, 643 F.Supp. 1050, 1054–55 (E.D.Mich.1986) (observing that the court is not to substitute its judgment for the franchisor's business decisions); *Siecko v. Amerada Hess Corp.*, 569 F.Supp. 768, 772 (E.D.Pa.1983) (beyond

---

**3.** That is, a franchisor can base nonrenewal on expiration of the underlying lease (§ 2802(c)(4)(A), (B)), or on its judgment that continuation of the franchise would be uneconomical (2802(b)(3)(D)).

**4.** Plaintiff's argument, when carried to its logical extreme, would require the application of 15 U.S.C. § 2802(b)(3)(D) virtually every time a

franchise is not renewed. As counsel for defendant observed in oral argument, economic considerations underlie most decisions to initiate, terminate, or nonrenew a franchise.

**5.** Atkins has entered into a direct agreement with the landlord, leasing the ground for a term of three years.

ascertaining whether nonrenewal was arbitrary or discriminatory, the court should not inquire as to its reasonableness). This Court finds that the PMPA does not contemplate an inquiry into the reasonableness of a decision not to renew a franchise.[6] Therefore, the Court declines to pursue such an inquiry.

## B. State Statutory and Common Law

### 1. Preemption

Atkins claims Chevron owes him for goodwill under the Washington Franchise Investment Protection Act, which states in relevant part:

> It is unlawful to refuse to renew a franchise without fairly compensating the franchisee for inventory, supplies, equipment, furnishings, and goodwill, except that compensation need not be made for goodwill if the franchisee has been given one year's notice of nonrenewal.

RCW 19.100.180(2)(i). Atkins also seeks damages and specific performance of an alleged promise by Chevron to sell him the improvements, under the theory of promissory estoppel and the implied covenant of good faith. Chevron claims that § 106(a) of the PMPA expressly preempts state laws aimed at regulating termination or nonrenewal of dealership agreements, to the extent that those state laws differ from the PMPA.[7]

The issue of preemption was addressed by the Ninth Circuit in *In Re Herbert*, 806 F.2d 889 (9th Cir.1986), where the owner of an ARCO station filed a Chapter 11 and moved to assume and assign the franchise to a third party. The bankruptcy court allowed the assignment, stating that ARCO's termination of the franchise (based on the franchisee's closing the station and failure to pay debts owed ARCO) was not effective under California law. *Id.* at 891. The district court reversed, and the Ninth Circuit affirmed, holding that the PMPA's procedural requirements for franchise termination preempt all inconsistent state law. *Id.* at 894. The court rejected the franchisee's argument that the PMPA dealt only with franchise termination and notice procedures, while the state unlawful detainer statute governed on the issue of his right to cure a default. *Id.* The court emphasized the need for a uniform set of rules on the grounds for nonrenewal and the notice requirements. *Id.* at 892.

[5] Other jurisdictions have split widely on the preemptive effect of § 2806(a), with the majority favoring preemption.[8] Under

---

**6.** Atkins cites a decision by this Court in *Trulock v. Union Oil Co.*, No. 84–63C (Western District of Washington at Seattle, Judgment and Order entered May 16, 1985, denying Union's motion for summary judgment based on § 2802(c)) [Available on WESTLAW, DCT database], for the proposition that a franchisor's decision not to renew a franchise will be reviewed for reasonableness. However, in that case, the franchisor's nonrenewal was based on the franchisee's felony conviction, for which sentencing was deferred, and which ultimately was expunged. This case does not permit the same sort of reasonableness inquiry. In *Trulock*, the statute was unclear as to how the court should treat a nonrenewal based on an expunged conviction. Here, the statute unambiguously permits nonrenewal based on expiration of the underlying lease. Plaintiff also cites *Weitz v. Mobil Oil Corp.*, — F.Supp. ——, No. 87–082–PA (D.Or. June 16, 1987), where the court granted a preliminary injunction to a dealer who had not been renewed because he failed to purchase the minimum quantity of gas, as specified in the franchise agreement. However, that case involved 15 U.S.C. § 2802(b)(2)(A), which permits nonrenewal for failure to comply with the franchise agreement, only if the agreement is rea-

sonable. In contrast, the statutory provisions at issue in this case do not predicate nonrenewal upon the reasonableness of the franchisor's decision.

**7.** 15 U.S.C. § 2806(a) states:

> To the extent that any provision of this subchapter applies ... to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no state or any political subdivision thereof may adopt, enforce or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to ... the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

**8.** For cases favoring preemption, *see Continental Enterprises, Inc. v. American Oil Co.*, 808 F.2d 24, 28 (8th Cir.1986) (applying PMPA's statute of limitations, but not reaching question whether PMPA preempted misrepresentation claim); *Consumers Petroleum Co. v. Texaco,*

*Herbert,* the applicable test on the question of preemption is whether state law is inconsistent with the terms or purposes of the PMPA. The FIPA contradicts the PMPA's notice provisions to the extent that it creates an incentive to give earlier notice by releasing franchisors from liability for goodwill if they give notice at least one year in advance of nonrenewal.[9] *See Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir.1986) (noting that state claims, on their face, do not appear to relate to notice requirements for nonrenewal, but have the effect of imposing a longer notice requirement).

Therefore, the Court finds that Chevron is entitled to summary judgment on Atkins' FIPA claim, since the inconsistent provisions of the FIPA are preempted by the PMPA. The Court does not reach the question whether Atkins' common law claims are also preempted. However, the Court finds that Chevron is entitled to summary judgment on these claims as well, for the reasons given below.

### 2. Contract

Atkins alleges that Chevron's retail marketing manager told a group of Chevron franchisees, at a meeting in January 1987, that upon nonrenewal of their franchises, Chevron would offer to sell them the improvements at half of their replacement value. Atkins contends that Chevron is therefore bound by promissory estoppel to sell him the improvements.

■ However, the record does not support Atkins' contention that he changed his position in reliance on Chevron's promise. An opportunity to purchase a nearby gasoline station arose before Atkins received Chevron's notice of nonrenewal on March 10, 1987. (Atkins dep. at 43–45). Since Atkins learned of the opportunity before he received notice of nonrenewal, the opportunity passed before he had any expectation of purchasing the improvements.

Therefore, the Court concludes that Chevron is entitled to summary judgment on Atkins' breach of contract claim.[10]

### 3. Implied Covenant of Good Faith

Atkins alleges that Chevron's actions violated the implied covenant of good faith and fair dealing that obligates each party to cooperate so that other parties may obtain the full benefit of performance. *Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 844, 410 P.2d 33 (1966). Atkins asserts that Chevron's refusal to sell the improvements or to compensate Atkins for his goodwill amounts to a bad faith attempt to usurp that goodwill to Chevron's advantage.

---

*Inc.,* 804 F.2d 907, 915 (6th Cir.1986) (PMPA preempted fraud and misrepresentation claims that effectively sought to impose a longer notice requirement upon Texaco than that required under the PMPA); *Siecko v. Amerada Hess Corp.,* 569 F.Supp. 768, 772–73 (E.D.Pa.1983) (claim for breach of fiduciary duty is preempted by PMPA); *Huth v. B.P. Oil, Inc.,* 555 F.Supp. 191, 194 (D.Md.1983) (state statute of limitations and common law actions for breach of contract and fraud preempted by PMPA).

Cases upholding state law claims include *Bellmore v. Mobil Oil Corp.,* 783 F.2d 300, 305 (2d Cir.1986) (PMPA does not preempt a provision of the Connecticut Gasoline Dealers Act that is identical to the Washington provision); *Jimenez v. B.P. Oil, Inc.,* 652 F.Supp. 329, 334–35 (D.Md. 1987) (PMPA does not preempt state statute requiring franchisors who terminate or unreasonably refuse to renew a franchise to pay the franchisee the value of goodwill); *L.C. Williams Oil Co. v. Exxon Corp.,* 627 F.Supp. 864, 868 (M.D.N.C.1985) (PMPA does not preempt state unfair trade practices law, the UCC provision prohibiting disclaimers of the obligation of

good faith, or state common law duty of good faith dealing).

9. As noted earlier, the PMPA requires final notice of nonrenewal not less than 90 days before the nonrenewal is to take effect, and notice that the franchise might not be renewed at some point before the final franchise term begins.

10. The record also reflects that Chevron kept its promise by offering to sell the improvements at a price significantly lower than that computed by the formula used by Chevron at the time the promise was made. (Declaration of R.H. Patterson). Atkins moved to strike evidence concerning settlement negotiations. However, Fed.R. Evid. 408 does not exclude offers of compromise that are offered for a purpose other than showing "liability for or invalidity of the claim or its amount ..." Since Chevron's purpose was to demonstrate that it kept its promise to sell the improvements, the evidence was admissible.

Atkins does not allege that his agreement with Chevron imposed an express duty on Chevron to compensate him for goodwill or to sell him the improvements. This Court will not imply such duties where Chevron has complied with the requirements of the PMPA.

## CONCLUSION

THEREFORE, Chevron's motion for summary judgment is GRANTED on all counts. All other motions not disposed of in this Order are stricken.

The Clerk of the Court is instructed to send copies of this Order to all counsel of record.